Filed 3/15/22  P. v. Arias CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JESUS GUILLERMO ARIAS,<br><br>  Defendant and Appellant. | E077586<br><br>(Super.Ct.No. CR39462)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

Defendant and appellant, Jesus Guillermo Arias, filed a petition for resentencing pursuant to Penal Code section 1170.95,[1] which the court denied. After defense counsel filed a notice of appeal, this court appointed counsel to represent defendant.

Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the facts, a statement of the case, and identifying three potentially arguable issues: (1) whether the provisions of Senate Bill No. 775 (Stats. 2021, ch. 551) apply retroactively to defendant's case; (2) whether the evidence relied upon by the court was admissible pursuant to Senate Bill No. 775; and (3) whether sufficient evidence supports the trial court's finding that defendant was ineligible for relief under section 1170.95. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On November 3, 1990, defendant drove by a home in his neighborhood; he pulled over because the people at the home were having a party. As a gang member, he and his associates controlled the neighborhood, including whether people were allowed to have a party. As defendant was talking with someone at the party, he heard a commotion; some of his friends were fighting. Defendant ran over and started fighting as well. He

---

[1] All further statutory references are to the Penal Code.

[2] The facts are taken from the transcripts of the preliminary hearing held on May 13, 1991, at which an officer who had interviewed defendant twice, testified, and defendant's parole hearing on January 8, 2015, at which defendant appeared. The People attached both transcripts to their brief and requested the court below take judicial notice of them. The court relied exclusively on the transcripts in rendering its factual findings.

then heard a gunshot. Defendant ran to his car, which was being driven by one of his friends; he jumped in. They drove over to a friend's house, where they obtained guns to exact retaliation. They drove back to the party house; "we got out of the car, and we shot at the house."

They saw a car leaving the house which, with defendant driving, they started to chase. They shot at the car.[3]

A person died. Defendant accepted responsibility for the killing because he was the one who initially stopped the car at the party, later drove back to the party house, and followed the vehicle: "I mean, if I didn't drive the car, it wouldn't have happened. If I wouldn't have drove them back to get the guns, drive back, do the shooting, none of that would've happened."

On May 15, 1991, the People charged defendant by felony information with murder (count I, § 187), attempted murder (count II, §§ 664, 187), malicious discharge of a firearm at an occupied motor vehicle (count III, § 246), and malicious discharge of a firearm at an occupied home (count IV, § 246). The People additionally alleged that defendant was personally armed during the commission of the murder and attempted murder (§ 12022, subd. (a)(1)) and personally used a firearm in the commission of the counts III and IV offenses (§ 1192.7, subd. (c)(8)).

---

[3] Defendant indicated that he did not personally have a gun or shoot during either incident.

On May 22, 1992, defendant pled guilty to second degree murder (count I) and attempted murder (count II). He also admitted the truth of the allegations attached to counts I and II. On July 24, 1992, pursuant to the plea agreement, the court sentenced defendant to 15 years to life on count I, a consecutive one year on the enhancement attached to count I, a concurrent term of life with the possibility of parole on count 2, and a concurrent one year on the enhancement attached to count II.

On January 11, 2019, defendant filed a form petition for resentencing pursuant to section 1170.95. On February 27, 2019, the People filed a response in which they contended section 1170.95 was unconstitutional. On March 28, 2019, defense counsel filed a reply arguing, in part, that defendant had made a prima facie showing entitling him to a resentencing hearing.

On May 8, 2019, the court stayed the matter to await resolution of appellate court decisions on the issue of section 1170.95's constitutionally. On March 11, 2021, defense counsel filed a supplemental reply to the People's opposition. On May 18, 2021, the People filed a brief opposing defendant's petition for resentencing. The People contended defendant was ineligible for relief as having aided and abetted the murder with implied malice.

On June 21, 2021, the court held what it characterized as a hearing on an order to show cause regarding defendant's petition. Defense counsel noted, "I can't remember if [the People] and I stipulated there was an agreement that there was a prima facie showing, so the Court is correct."

4

Defense counsel argued, "I don't think it . . . has been proven beyond a reasonable doubt that [defendant] is guilty of second degree murder based on implied malice murder. [¶] I think in the instructions that were given in the codefendant's case, clearly the natural and probable consequences doctrine was not only instructed but certainly used in that case, and I do think that there is a reasonable doubt with respect to [defendant's] specific involvement in the case that he was—that he's guilty of implied malice murder. So I think it's at least equally plausible that he could be convicted of murder based on the natural and probable consequence theory based on the underlying fact of how this murder took place . . . . I think there's a reasonable doubt on the implied malice theory based on what the Court has before it, and I would ask the Court to conclude that [defendant] was guilty of murder based upon natural and probable consequences."

The People argued that the evidence showed "beyond a reasonable doubt that the defendant intentionally aided and abetted [the murder] with implied malice . . . ." The court noted that what it "found most instructive were two transcripts. There were two transcripts provided to me by the People."

The court discussed the transcript of defendant's parole hearing: "What I take from this first transcript, at least according to [defendant], is they went to what I believe is the victim's house. They stop by. He and a couple of folks were in his car. Because there was a party that they were unaware of, and because they were gang members and this was their neighborhood, they wanted to check out what was going on in there. In

5

very short order, folks became involved in a fight. [Defendant] indicates that he comes back to the front yard, his friends are in a fight, he starts fighting as well."

They left the house together; they armed themselves, including defendant;[4] they went back to the house where they started shooting at the house; they chased a car at which they fired shots; defendant was the driver. When asked why he went back to the house, defendant said, "'retaliation.'" When asked who was responsible for the murder, defendant responded, "'I was.'"

The court then discussed the preliminary hearing transcript: "[I]n this sequence of events, it's very similar. [Defendant] describes the same thing, going to the party; that a fight erupted; they leave the party; they go and get a pistol grip pump shotgun; they go back by the house; there are shots fired at the house, and it's drive-by number one. . . . After the shots are fired, there is a white [car] that takes off, and they chase the white [car]. And there's another shot fired at the white [car]. . . . [A] number of people arm themselves. . . . [¶] . . . [¶] . . . Certainly in the parole hearing it sounds like there was only one shooting that occurs at the house, but [defendant] seems to describe the shooting that happened the second time in terms of the statements attributed to [defendant] . . . during the preliminary hearing."

---

[4] Although later defendant indicated he was unarmed.

The court found that defendant did everything he could "to aid, abet, and facilitate the application of deadly force . . . . There is a good argument that he aided and abetted with a specific intent to kill. . . . [¶] . . . [¶] Any rational trier of fact . . . has to conclude that he not only contemplated the death of the occupants of that house, that he was good with the death of the occupants of that house. This absolutely satisfies an implied malice standard. The Court finds overwhelming evidence based on the statements attributed to [defendant] alone, not even considering what his codefendants said about his complicity in the crime, that he's guilty of . . . second degree murder under an implied malice theory. [¶] For that reason, he is not entitled to the relief . . . . I believe the People have satisfactorily proven his guilt beyond a reasonable doubt, and for that reason, no additional relief is warranted."

## II. DISCUSSION

We offered defendant an opportunity to file a personal supplemental brief, which he has not done. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no arguable issues.

## III.  DISPOSITION

The order denying defendant's section 1170.18 motion is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

We concur:


MILLER

J.


CODRINGTON

J.